Good morning, and may it please the Court. I'm Robert Jobe, and I'm appearing today on behalf of the Petitioner Mohammed Khan Raza. In this case, the immigration judge perceived a number of discrepancies both within Mr. Khan's testimony and between Mr. Khan's testimony and the supporting documents that he submitted. But in my review of the record, I have a hard time finding that the immigration judge actually confronted Mr. Khan with any of these perceived discrepancies. First, the immigration judge suggested that, you know, on the one hand, supposedly Mr. Khan testified that he was one of the first 40 or so people to join this party that he belonged to. And the IJ found that inconsistent with the notion that the party was able to, quote, organize a rally with thousands of people and have the sort of high profile described in the report documents in the file in 1995. A couple things bothered me about the failure to confront him on this. First, the report documents that supposedly describe this party as having a high profile, they don't exist. I mean, there are only three or four documents in the entire record that even reference this party. None of them talk about them having a high profile. There are interviews with the leaders of the party, nothing more than that. Well, no, he said he was very chummy with the chairman of the board or whatever it was. And he portrayed himself as being a very big shaker, a mover in the party. I don't agree with that, but that's a separate point. The issue here is that the immigration judge is saying – Even the chairman stayed at his house, was his personal friend or whatever. Exactly. But the point here is that the immigration judge is saying not that he had a high profile in this first issue, but rather that the party itself had a high profile. I don't support that. I mean, that's not entirely outside of the record, because there was some evidence, some claim that there was a rally with thousands of people. And that does suggest that there was some kind of a high profile. Well, that's the other issue that the judge is raising here, and I want to discuss that, because the judge says that this party organized the rally. But Mr. Kahn never testified to that. If you look at the record here – and this is on page 94 of the record – what Mr. Kahn actually said is that on the 5th of January, 1995, in Mirpur, there was a big rally in which the leaders and the party members of the UK PNP were present. I was present at the rally. He never suggested that the party organized the rally. Yeah, but that was part and parcel of his other aggrandizement as to his stature in the movement. Well, let me come back to that in a second, because I disagree with that, Your Honor. But, you know, my point is that the rally – there's nothing to suggest that this rally in 1995 was organized by the party that he belonged to. And, in fact, if you look at the documentation in the record, the party, it seems to me, is very small. That's my take on this case. The Canadian Refugee Board report that's in the record – and I think that's somewhere around page 361 – it describes the various parties. It doesn't even mention this party. There's no dispute that the party exists because we have interviews with the leader and, you know, whatnot. But it's not a huge party. It doesn't seem to me it's a huge party. But there are documents in the record that talk about people being arrested at these opposition rallies. But what these documents suggest is that these opposition rallies are organized by an alliance of parties. This is set forth in the country report on page 170. It says, throughout the year, government occasionally interfered with opposition rallies, which were held by an alliance of parties. Another document in the record, page 308, talks about people being arrested at demonstrations. It says 27 members of the JKLF were arrested and several members of this guy's party, the UKPNP. That suggests to me that these rallies are being organized by an alliance of parties and that the UKPNP is not a huge party. If a few of its members were arrested but 27 members of the JKLF, that gives us some sense of proportion. Now, this thing about, you know, what you're talking about, Judge Cowen, about him claiming to be a bigwig in the party, I don't see that in the record. What he said repeatedly is that he was a senior member of the party. Yes. But he never – yeah, he never claimed to have responsibilities. A senior and important member. Turning to the UKPNP letter, the IJ noted that even though he emphasizes – even though he emphasized he was a senior and important, his testimony in supporting affidavit, the letter itself merely identified him as a permanent member. Right. Yeah. What he actually testified was not that he was an important member but that he said, I am close to the chairman and I have some important job to do in the party. But the letter also didn't mention anything about incidents of torture. Right. Even though he was supposed to inform the party of his mistreatment by the ISI. I mean, I would go back to the Singh case that we cited in our brief. That's a case that concerned a doctor's letter that didn't include all kinds of what could be significant details about the case. But it seems to me that you can't really draw such an adverse inference from the omission of those sorts of things from a corroborating document that's sent from thousands of miles away. I mean, my point on that is that the documents that the immigration judge is relying on here, they're not inconsistent with his testimony in any way. Well, but does it compel? You know, we don't hear this case de novo. We're in a situation where we have to be compelled to feel that the. Correct. That his credibility could not reasonably be adjudicated against him, even though if we were sitting as the IJ, we would have gone the other way. I don't. I don't. I agree with you that there's a lot here. Right. That swings both ways. But does it swing such a way that no reasonable IJ could have. I mean, you talk about the letter stated that secret agents agencies register many cases against him. Well, I'm going to come to that next. But I don't disagree with your point about the standard of review. Even though he claimed the police never filed any formal cases, at least before he fled the country. Let me discuss that. But first, on this issue about the standard of review, I agree that generally that's the standard of review. But as a threshold matter, to uphold an adverse credibility finding, you have to find that the immigration judge gave a specific and cogent reason here. And I'm suggesting that the lack of detail in these letters is not a specific and cogent reason, because you're talking about an omission, not an inconsistency. And the Singh case that we cite in the brief in this circuit is clear on that point. Now, this issue about, you know. Well, in the Singh case, your client failed to present any physical evidence that was evidence such as was presented in Singh. He presented no physical evidence. No. What was at issue in Singh was there was a letter from a doctor who was corroborating the fact that the guy received medical treatment. And there were significant details that were absent from the letter. And this court said, emphasized that the letter wasn't in any way inconsistent with his testimony and that the omission of such details in and of themselves would not be a sufficient basis. But not a specific and cogent reason to question the guy's credibility. And on that point, I think that case is controlling. Now, I think you were talking about whether cases were registered against him. On that point, again, the I.J. never confronted Mr. Khan on this point. And that's troubling for a couple reasons. You know, first off, obviously, the transcript is entirely unclear about what he said, about whether cases had been filed against him. And there are two questions to ask, and both of them in the transcript are inaudible or indiscernible. But we know he answered it. But the point is that if you look at his application, the application that he filed, and I think this is page 411, this is the only other place in the record where the issue comes up. And he says that although there were no charges filed against me while I was there, since I've departed the country, I've spoken with my wife, I know that they're visiting my home, and I've come to learn that charges have been filed against me. That's the only other thing. And that's in the record about this. And that's entirely consistent with his testimony. The only supposed inconsistency on this point are the two questions that the transcript reveals, the answers of which are completely inaudible. Now, I only have a minute and 40 seconds left. If there are no further questions, I'd like to reserve the balance of that.  Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Aviva Poxter for the Respondent, the Attorney General. Your Honors, the petition for review should be denied in this case because this record does not compel the conclusion that Petitioner credibly established eligibility for relief. Counsel, if we were to find counter to your argument that the reasons given were incorrect or not specific, cogent, et cetera, or that the Petitioner was not given an adequate opportunity to explain perceived inconsistencies, why wouldn't we return this case on an open record for further proceedings? In other words, we have a third choice. You're suggesting that our choices are he's either believed or disbelieved here, end of story. But isn't there a third option that if the reasons given by the I.J. are insufficient, particularly where there's been an absence of opportunity to explain, that there can be a remand for those explanations and for further proceedings? Oh, yes, there can be. Under Ventura and under Thomas, there absolutely can be a remand. And, in fact you have to. And under Sotomayor, our Court has said that as well. Yes. And, no, you would have to, because there's no alternative finding here other than credibility. So if, in fact, you don't agree with that, with that finding, if you find that this record compels a contrary conclusion, yes, you have to. No, see, that's where I'm falling short of that. If we were to conclude that the reasons given by the I.J. were insufficient. Yes. No, you would have to send it back. We have to send it back. Yes. Regardless of and on remand presumably there could be another adverse credibility finding after giving him an opportunity to explain and so forth and so on. Yes. So that's the distinction I guess I'm asking you to about, whether there's something other than we are compelled to find him credible if we simply find that the I.J. messed up, to use the vernacular, we don't have to find him credible if we send it back on an open record. Yes. No, absolutely. And I see what you're saying, Your Honor. Yes. You would have to send it back in that case as well. But here you have an I.J. that denied this case, found adverse credibility on five different grounds. And there are sub, the way that I broke it down, there are subsections to each one of those, to each of those grounds as well. So you have, it's kind of a hard road to hoe for you to find that every single one of those. Why don't you tell us what, in the government's view, what is the most damning piece of evidence against Mr. Kahn? I would say that probably the party letter is the most damning piece of evidence. And what is it about the party letter that's lacking? Well, it's... Because it does not refer to the torture that he received? Yeah. Well, that. It doesn't, it's not consistent with his own characterization of his role in the party, what he did for the party, what his relationship was to the leaders of this party. It's not the kind of letter that you would get from, for someone who was, in fact, so involved and was tortured. That's, isn't that just pure speculation? There's nothing that the letter says that is contradictory to what he said. It doesn't say, for example, he was the secretary-treasurer, whereas he testified he was never secretary-treasurer, he would never do that job, he was vice-president. I mean, there's not a conflict. One's very vague and one's not. It seems to me, I'm going to follow up on Judge Graber's comment and give you my comment so you can answer all of them. Okay. Is that the letter may not be terribly corroborative, but it's hard to find that it's inconsistent. And it may suggest that we have a poor letter writer on the other end of this process, but it's hard to find that it actually contradicts things that he said. Again, it doesn't help him very much. It doesn't help his affirmative case. Well, respectfully, it does contradict this issue about complaints being registered against him. He testified, oh, no, there were no complaints registered against me, but the party letter says that there were. So that, in fact, is an actual inconsistency between his testimony and this letter. And in addition, you have other. Where is the testimony that the police – in your view, that police registered cases against him before he fled the country? Where is that testimony found? I have that at page 72 of the record. In my notes, I have it at page 72 of the record. And if that's not what you're asking. Not 72 of the hearing transcript, but 72 of the – Oh, 72 is the judge's decision. Right, because that's – No, I don't have a state citation for that. Well, the reason I'm asking is the only thing that leaped out at me was page 142. Did the police file any cases against you in court? Answer, non-audible response. Question, did they file any cases against you? Answer, indiscernible. How are we to review that, and how are we to conclude that that's inconsistent with anything when we don't have any idea what it is? Well, the immigration judge, in his decision, did say that what he heard him to say was no. Oh, so we should just go by the decision and not by the record? Well, it is – it is unfortunate that that does say that it's indiscernible, but it doesn't mean that it was indiscernible to the judge. It just means that it's not. Well, how do we review it? If someone says the light was red, but it's indiscernible, and then someone finds that the light was green, it could be an error, but we wouldn't have any way to review it. How can we possibly review this? Well, I mean, again, the immigration judge did find, did state that. And if you look at the way that there's follow-up testimony, they were obviously very carefully questioning, follow-up questions. They were questioning him about that to make sure that that was correctly specified. But again, even if you don't go with that inconsistency, even if you find that there's a problem with that, there are other bases for the adverse credibility finding. So again, even if that is a problem for you, that still doesn't show that this record compels a contrary conclusion. For example, if you look at the letter from the medical center, the letter doesn't say anything other than he was treated as a case of torture. Well, again, this is similar to the question that Judge Bybee asked you earlier. It's generic. It's general. It doesn't say what specifically was wrong, but it's not inconsistent. It's not inconsistent, but it doesn't help him, and he's got the burden of proof. That's a whole different question from whether he, from an adverse credibility finding. The I.J. could have found, I find that the Petitioner here has failed to satisfy his burden of showing that he suffered past persecution. But that's not what the I.J. said. The I.J. said, I don't find this to be a credible witness. I don't believe what he's saying because he's been crossed up by the evidence he's brought in. That's a very, very different finding. But it's still, respectfully, in our view, that's still his burden of proof. I mean, the first thing, threshold issue, he's got to do is be credible. But you're arguing you want us to deny this petition on a ground other than what the I.J. found, when you argue that he's failed to satisfy his burden of proof. Well, perhaps I misspoke, Your Honor, but in order to satisfy his burden of proof, his first threshold thing that he's got to meet is he's got to be credible. He's got to give us a story that we believe, and it's got to be, if there's any inconsistency or any question with his testimony, it's got to be backed up. He's got to show us that first to meet his burden of proof. And again, in this Court, it's a very high standard. He's got to show that this record compels reversal. And in our view, this record doesn't. That's, I think, where we're crosswise. I think what he has to show is that each reason given by the immigration judge was defective, was legally defective. That's all he has to show at this point. Right. And perhaps that would then be the compelling issue. That would be the compelling – that would compel you, I suppose, to send it back. But again, here he hasn't done that. He testified that this party was openly operating in his region. Senior party members are free to engage in political activities. The Secretary General of this party gave him a letter. That person is obviously not being detained or otherwise tortured or jailed. He couldn't explain why he, rather than any of these other people, would be singled out for persecution other than this – his unsubstantiated close relationship to the heads of this party, which, again, wasn't spelled out in the letter from the head of the party. I'm sorry. Counsel, in your last half minute, would you tell us about the exhaustion – I'm sorry, about the filing deadline problem? For the asylum, Your Honor? Yes. Well, it's our position, first of all, that you don't need to reach that issue. The government's position is we don't even have to reach any of this, right? Right. On the deadline, absolutely. You don't need to reach it. And why don't we have to reach that? Well, because here you have the board talking about the asylum standard and saying he didn't meet the asylum standard. So he's actually had – I'm referring to his failure to file within one year. Isn't that the government's position, that there's no jurisdiction over this? Well, post-Husiev, Your Honor, which I did 28J about two weeks ago, this Court has found jurisdiction in similar cases. So I don't think that we can really come to you in this case and say that you don't have jurisdiction over that issue. But your earlier briefing was before that case. About three years ago. Yeah. Yeah. So we're not – I don't believe the question was intended to fault the government for having taken that position before we ever decided the issue. Right. Oh, no, no. No, I just want to – no, I understand your question, Your Honor. And, no, I don't think we can say that you don't have jurisdiction. What I can say is I don't think you need to reach the issue. Because if you look at the board's decision, the board talks about it. I'm sorry. I want to make sure I understand. You think that the question of whether he failed to file a timely application for asylum is no longer before us. Is that correct? Mm-hmm. Okay. Yes. We, again, don't think that you need to reach that issue. But suppose we did need to reach it. You feel as if it shouldn't be considered? Are you abandoning that issue if we rule against you concerning the credibility? Do you say that you don't want us to consider the failure to file? Since it would go back anyway, Your Honor, I don't think that you would need – that you would need – that you should reach that issue. I mean, I think this case at this point is going to rise and fall on the credibility. But you're not – I'm crosswise, and I'm – I didn't understand the answer to Judge Cowan's question. Is the government still alleging that Mr. Kahn failed to timely file an application for asylum and, therefore, is not entitled to asylum on that basis? He admitted that he filed untimely. I realize that. And I do think that you now have jurisdiction over the merits of that determination. You could make a determination on that. Okay. That's fine. Now, is it the government's position that he failed to timely file an application for asylum, and on that ground alone we should deny his petition here? You could, yes. You could deny his petition on that ground alone. You have jurisdiction over it. So you're not abandoning that argument? We're abandoning the argument that you don't have jurisdiction over that determination. To consider the argument. Right. Right. But you're not abandoning the position that the failure to file a timely application for asylum is independent grounds for denying the petition here. No, no. It is an independent ground for denying the petition, yes. But you do have jurisdiction at this point post-Husseyev and cases like that. Okay. Thank you, counsel. We appreciate that you answered all of our questions. And, Mr. Job, you have a few minutes – well, one and a half minutes. Ms. Job, I hope that you will address the question of the failure to file. Let me start there. Obviously, there's no way that that could possibly be an independent ground to deny the petition because the one-year rule only goes to asylum. Credibility goes to withholding of removal and CAT, and that's the way the immigration judge set his decision up. So even if you were to agree with the government on the asylum claim, you'd still have to consider the credibility. If we win on credibility, the case has to go back so the judge can reconsider his rulings on withholding of removal. Okay. Go ahead and tell me why you think that he ought to be excused. Well, for starters, it seems to me the threshold question in this case is, did the board or the I.J. issue a reasoned decision on this point? And my view is that they didn't. I mean, I think the case has to go back so that they can actually grapple with the ineffective assistance of counsel claim that's been raised here. What's wrong with the failure to file? He went to get a labor certificate or whatever, a work – to work. He never spoke to anyone. The record is barren of him ever speaking to anyone about asylum. Right. Within the one-year period. He only wanted to get a labor certificate. We don't have any evidence that he told his counsel in Virginia of his fears of returning to Pakistan. There is an absence of evidence on that. And that also rules against his credibility, because if he claimed he was being persecuted so much, he never mentioned it until after the fact, so to speak. That's obviously not an issue that – a reason that the immigration judge gave, so that's not an issue you can affirm on. Well, I know, but we can consider the entire record. No. You can only affirm on the reasons that the immigration judge set forth. If we thought that the – that he had not filed a timely asylum application, then what should we do? Well, you know, if you were to agree with the government on that point, and I'd still like to answer that question. I'm out of time here. You may answer it. If you were to agree with the government on that point, then the case still has to go back for the immigration judge or the board to reconsider the issue of credibility. Now, I agree with your point, Your Honor, that I don't think you can reverse here. Going back to your question, Judge Cohen, I mean, it seems to me that to reverse the evidence has to be so compelling that no reasonable fact finder could disagree with it. But to vacate and remand for further proceedings on this issue – It's a lesser – it's a lesser burden. I agree with you. I don't agree that that standard will apply. No, I agree with you. That decision, yes. But on the one-year issue, I mean, basically the claim is this. It's an ineffective assistance of counsel claim. The man came into the country on March 31st, I think the year 2000. He retained this lawyer – No question that he got ineffective assistance of counsel as to the labor certificate. Well, and he retained this lawyer on March 13th within the year, March 13th of the following year. The retainer agreement that's set forth on page 417, it says that he's retaining him to obtain a green card through Labor Cert. If he's obtaining a green card, that obviously mitigates any need to apply for asylum for the average Joe. Sure. And a – and a diligent lawyer having a – someone from Pakistan might have made further inquiries, but we have absolutely no evidence that he went in there to find out how he could stay in the United States under a claim of asylum. Well, I don't think you need that evidence, because if there's – if the lawyer is telling him that you're going to get a green card, you're going to get a green card through this process, which is what he's represented here in his testimony. And if that testimony is credible, you obviously need to credit it. But on pages 116 and 117, he says – There would be nothing that would prevent him from getting alternative relief, would there? There isn't. But on the other hand, we believe that the Board should consider whether there's an extraordinary circumstance if a lawyer is telling you you're going to get a green card through this process. And that's what was represented to him on pages 116 and 117, and he makes that clear. And if a lawyer is telling this person you're going to get a green card through this process, why would he file for asylum? If he gets the green card, what kind of status does he have in the United States? It's better than asylum. You know, with asylum, you get asylum, and then one year after the grant of asylum, if you've been physically present for a year, then you can apply for your green card. But what this lawyer was representing to him is you don't have to go through the asylum process, because we're going to have you – you're going to skip that whole thing. You're going to get the green card that you would have to wait a year after having been granted asylum for even – to even apply for. So in that circumstance, why would you apply for asylum? It seems to me that if there was ineffective assistance of counsel here, that is an extraordinary circumstance that certainly relates to the failure to file. But my problem with this is that neither the immigration judge nor the Board of Immigration Appeals considered this question in the context of an IEC claim. They didn't – you know, it's a two-part question. First, was there ineffective assistance of counsel? Secondly, was there prejudice? They never really considered this issue about prejudice. The standard for prejudice in a case like this, we don't know what it is. Neither the IJ nor the Board articulated one. I don't think you should be articulating that in the first instance. But my basic point is that because the Board never considered this issue in the framework of an ineffective assistance of counsel claim, it should go back so they can do that in the first instance. If we lose on that point, we'd be back here. Okay. Thank you very much. Thank you. We used a lot of both of your time, and we appreciate very much the answers and the arguments of both counsel. They've been very helpful in this case. The case is submitted.
judges: Cowen, Graber, Bybee